## MAX HENDRICK, Appellant, v. DANIEL W. JACKSON, Respondent.

(167 N. W. 757.)

**Action to quiet title — relations of parties — fiduciary — violation of — foreclosure of mortgage in — redemption — findings and judgment.**

1. In an action to quiet title in which the trial court permitted the defendant to redeem from a mortgage foreclosure on the ground that the plaintiff had obtained a sheriff's deed in violation of a fiduciary obligation owing to the defendant, the evidence is examined and *held* to support the findings and judgment entered by the trial court.

**Pleading — answer — amendment to conform to proof — motion for — no ruling on by trial court — decision in conformity with proof and proposed amended answer — amended answer filed — motion to strike — properly denied.**

2. Where a defendant moves to amend an answer to make it conform to the proof adduced at the trial, and where it appears that the trial court, though not ruling on the motion, has decided the case upon the issues presented at the trial and raised in the answer as sought to be amended, a motion to strike

from the record an amended, substituted answer embracing the allegations contained in the proposed answer, will be denied.

Opinion filed April 29, 1918.

Appeal from the District Court of Hettinger County, Honorable *W. C. Crawford,* Judge.

Affirmed.

*C. H. Starke,* for appellant.

Where a long time elapses between the time of trial and the date of findings by the court, and where no transcript or record was made or used by the court, there is no serious presumption that the findings are correct, and such findings are not entitled to that consideration which is usually accorded. Reed v. Ehr (N. D.) Adv. Sheets N. W.

A mistake of fact on the part of one party to a transaction in no manner induced by the other party will not justify a court of equity in granting relief of an affirmative nature. Tice v. Russell (Minn.) 44 N. W. 886.

A court of equity will not set aside a sheriff's deed and allow a redemption except upon evidence of a clear and convincing nature. Kenmare Hard Coal Co. v. Riley, 20 N. D. 182.

The evidence being of such a nature, the right to redeem after time is allowed only under certain well-recognized equitable rules and conditions. It must appear that the party was prevented from redeeming by fraud or mistake, or that there are exceptional equities in his favor. There must be no negligence on the part of the one seeking to redeem. In this case there was no promise to extend the time, nor was there any act that tended to mislead. 27 Cyc. 1822; 16 Cyc. 39; Becker v. Lough, 14 N. D. 81; Prondzinski v. Garbutt, 8 N. D. 191; Murphy v. Tutsch, 22 N. D. 104; Schroeder v. Young, 161 U. S. 334, 40 L. ed. 721; Benson v. Bunting, 127 Cal. 532, 78 Am. St. Rep. 81; Mahony v. Ellis (Wash.) 125 Pac. 1031.

A mistake of fact is never ground for affirmative relief in equity, unless the mistake is mutual or a mistake of one party known to the other. Comp. Laws, § 7202; Pom. Eq. Jur. § 870.

The foreclosure here was a statutory proceeding under the power of

sale, and the period of redemption had expired, and the redemptioner's rights had been forfeited, under the statute. .

"Whenever any forfeiture is provided by statute, to be incurred upon the doing or not doing of some specified act, equity can afford no relief from it, and the same is true of a statutory penalty. A court of equity has no power to set aside the express terms of statutory legislation, however much it may interfere with the operation of common-law rules." Pomeroy, Eq. Jur. 3d ed. § 458; Smith v. Mariner (Wis.) 68 Am. Dec. 73.

In such cases equity will not step in and relieve from or mitigate the penalty or forfeiture imposed by the statute. Clark v. Barnard, 108 U. S. 436; State ex rel. Anderson v. Kerr (Minn.) 53 N. W. 719; Hoover v. Johnson (Minn.) 50 N. W. 475; Hyman v. Bogue (Ill.) 26 N. E. 40; McConkey v. Lamb (Iowa) 33 N. W. 146; Rucker v. Steelman, 73 Ind. 396; Prondzinski v. Garbutt, 8 N. D. 191; Schroeder v. Young, 161 U. S. 334; Benson v. Bunting, 127 Cal. 532; Mahony v. Ellis (Wash.) 125 Pac. 1031; Reynolds v. Loan Co. (Minn.) 48 N. W. 458; Nichol v. Tingstad, 10 N. D. 172; Becker v. Lough, 14 N. D. 81; Bailey v. Hendrickson, 25 N. D. 500.

The circumstances or fraud sufficient to permit a court of equity to interfere must be so clear and convincing as to amount to an estoppel. Kenmare Coal Co. v. Riley, 20 N. D. 182.

*Jacobson & Murray* and *L. A. Simpson,* for respondent.

A man cannot remain silent when law and conscience require him to speak, and then later on, and after another has relied and acted upon his silence and conduct, complain, or change the position of the parties to the injury of either. Mohal State Bank v. Duluth Elev. Co. 35 N. D. 619.

An agent shall acquaint his principal with all material facts in relation to a transaction in the interest of the principal, and will not be permitted, without his principal's knowledge and consent, to purchase for himself any outstanding adverse right or title, although he purchases such right or title at a judicial sale; and this is especially true when at such sale the agent represents himself as purchasing for his principal. 2 C. J. §§ 363, 365, pp. 706, 710; Patterson Land Co. v. Lynn, 27 N. D. 391, 147 N. W. 256; Comp. Laws 1913, § 5963.

A court of equity has the right to relieve from a forfeiture occasioned

through mistake. Comp. Laws 1913, §§ 5963, 7138; Wade v. Major, 36 N. D. 331.

Relief from a plain and acknowledged mistake in law is not beyond the reach and power of equity. Courts of equity have the right even in such cases to intervene and do justice. Benson v. Bunting (Cal.) 59 Pac. 991.

BIRDZELL, J. This is an appeal from a judgment of the district court of Hettinger county, entered in an action to quiet title. By the judgment the defendant is permitted to redeem the north half of section 32, township 136 N., range 94 W., from a foreclosure, in pursuance of which a sheriff's deed has been issued, upon paying to the plaintiff the amount due on the liens and encumbrances. The specification is for a trial de novo. The facts are as follows: In June, 1913, the defendant gave two mortgages covering the above-described land and also the southeast quarter of the southwest quarter of section 30. The first mortgage was to the Fargo Loan Agency for $2,600, and the other was to Jacob Graeber for $664. The latter mortgage was also subject to three other mortgages aggregating $1,320. Max Hendrick, plaintiff and appellant herein, acted as agent for the defendant in negotiating the loans made in June, 1913. The Graeber mortgage was foreclosed in May, 1914, and prior to the foreclosure sale the plaintiff Hendrick had purchased of the defendant for the sum of $1,000 the southeast quarter of the southwest quarter of section 30. Apparently for the purpose of protecting the interest so purchased, the plaintiff appeared at the foreclosure sale and bid in the north half of section 32 for the full amount due on the mortgage. A short while before the expiration of the period of redemption, the defendant Jackson and his wife packed up their effects and left for Iowa, where they remained for the period of about six months. They left their live stock and some other personal property behind, however. The plaintiff obtained a sheriff's deed to the premises at the expiration of the period of redemption, and when the defendant returned in the fall of 1915 he went to the plaintiff to obtain an order on the tenant, who at that time occupied the farm, to enable him to go there and obtain the personal property which he had left there in the spring. When Jackson went to the farm he remained as the permanent

occupant, and in his answer filed in this suit he claims the right to redeem from the foreclosure.

The facts upon which the trial court based the defendant's right to redeem are controverted, and will be stated later as they are gathered from the testimony.

The findings of fact upon which the existence of the right of redemption was based are to the effect that, in the bidding in of the land on foreclosure sale, the plaintiff acted in the capacity of agent for the defendant; that by his acts and conduct he led the defendant to believe (and the defendant did have reason to so believe), that the plaintiff was acting as his agent in bidding in and acquiring the sheriff's certificate; that a confidential and trust relation existed between the plaintiff and defendant in connection with the sheriff's deed, and that the plaintiff's acts were such as to lead the defendant to believe (and that defendant did believe), that the plaintiff would look after this foreclosure for him and protect him against the loss of his land. The court also found that the defendant, while absent in Iowa, during which time the period of redemption expired, relied upon the plaintiff to look after the matter of the foreclosure in the defendant's behalf. The foregoing findings raise the only question that is seriously urged upon this appeal. The appellant contends that the evidence does not sustain the findings, and it is clear that if they are not sustained by the evidence the judgment must be reversed because of the absence of any other equitable circumstances upon which the right of redemption could be based.

It is undisputed that the plaintiff had acted as the agent of the defendant in procuring the loan, to secure which the Graeber mortgage was given, but the extent of this agency beyond this is in doubt.

Hendrick's testimony bearing upon the matter is as follows:

A. Well now, on that date I was at the farm twice. On my way from Dickinson to Mott to attend the sheriff's sale I stopped to see Mr. Jackson and he was working among his tools in the barnyard, and I told him I was coming down here to attend the foreclosure sale, and asked him then if he had made any arrangements to take care of the Graeber matter and he said no, that he had not, and he wanted me to take care of it; that I would have to bid it in. So I came on to Mott and in the afternoon after the sale I stopped there again. Jackson was working about the buildings and I stopped my automobile near the house, and when

I got out I told him to tell Mrs. Jackson to come out of the house, I wanted to talk to both of them. And he said: "No, I don't want you to talk with Mrs. Jackson at all about this matter. I want you to keep it away from her." Naturally we walked a little ways from the house, and I told him I had bid in all of the land except the 40 acres.

Upon cross-examination he testified as follows:

Q. Now, Mr. Hendrick, before the sheriff's deed was issued you want us to understand that you were very anxious that Jackson should not lose his land; that he should redeem it?

A. Yes, sir.

Q. And you went so far as to make special trips down there to him for that purpose?

A. Yes, sir.

Q. You done practically everything that was in your power to encourage Jackson to redeem before the year was up?

A. Yes, sir.

Q. During these times you have mentioned you were posing as a friend and adviser of Mr. Jackson's relative to those deals?

A. Yes, sir.

Q. In a way with this Graeber deal you were acting as Jackson's attorney?

A. As his agent, yes, sir. . . .

Q. Now, did you ever tell Mrs. Jackson at any time or any place that you had sold the land?

A. I told Mrs. Jackson that I had entered into an agreement to sell.

. . .

Q. Mr. Hendrick, after Jackson came back from Iowa if he had offered to pay you all what you had in the land would you have given him the deed back for it?

A. I couldn't. I was under obligations of agreement to sell to a party, and I told Jackson that if he would wait until I could withdraw from that agreement why I would entertain a proposition of that kind.

Q. So then Jackson was talking to you about paying you what you had in the land?

A. He asked me how much it would take, and I told him I wasn't in a position to entertain a proposition of that kind at that time.

At another place in his cross-examination, Hendrick had stated that he did not claim that he had ever sold the land to anybody else.

Jackson testified that he had listed his land with Hendrick for sale before going to Iowa, and that after he came back from Iowa the plaintiff came out to the place and the following conversation took place between Mr. and Mrs. Jackson and him: " 'If you get your money back can we have back our land?' He says, 'Did you see me and a man in the car upon this land?' She says, 'Yes.' He says, 'I sold the land and got my money for it.' I says, 'You can't sell the land.' That is after I commenced proceedings against him. He says, 'I sold it and got the money for it.' " Jackson also testified that on a previous occasion in Dickinson, Hendrick had told him that if he did not sell the land he could have it back by paying up his back interest. The testimony of the Jacksons and that of Hendrick is not, of course, consistent, but in that portion of Hendrick's testimony which is quoted above there are sufficient admissions of circumstances and facts to warrant the court in giving to the testimony of the Jacksons the greater weight. In so far as questions of veracity arise, we are conscious of the superior facilities of the trial court for forming a reasonable conclusion. We are satisfied from an examination of the record that there is sufficient evidence to amply sustain the findings of the trial court relative to the agency, the confidential relations, and of the reliance of the Jacksons upon Hendrick for protection in the matter of the foreclosure of the Graeber mortgage. There are circumstances in addition to those previously referred to that lend support to the findings. These pertain to previous transactions in which Hendrick had assisted the Jacksons in financial matters by acting as their agent and adviser.

The appellant has made a motion herein to strike the amended answer from the record on several grounds. The only ground that we need consider is that which goes deepest into the merits of the motion presented. It is contended that the copy of the amended answer which is substituted in the record for the original, on account of the loss of the original, does not conform to the amended answer as dictated into the record at the time of the trial. Appellant's counsel has apparently overlooked the motion made by respondent's counsel at the close of the trial, in which he moved for leave to further amend the answer to conform to the facts developed during the trial, by adding the following allegation: "That,

at the time the fraud herein alleged was perpetrated, Max Hendrick was the confidential agent for the defendant Jackson; that he violated his trust relationship. . . . " The statement of the case does not show that the court ruled on this motion, but in the light of the findings which were subsequently made it is clear that the court considered the issues presented as having been properly raised. In this state of the record, this court will have to consider that the answer was so amended. Since the respondents are entitled to a trial *de novo* upon the issues that were presented in the trial court, it would be futile to strike the amended, substituted answer from the record. The allowance of the motion could at most but result in ultimately incorporating an answer which would conform to the issues tried below.

The motion to strike is denied, and the judgment of the trial court is in all things affirmed.

BRUCE, Ch. J. I dissent. It appears to me that no agency is proved.

ROBINSON, J. (concurring). This action relates to a half section of land worth about $9,000 (N.½ 22–136–94). At a foreclosure sale on a mortgage to Jacob Graeber, plaintiff bid in the land for $493.73, which was about 10 per cent of the value of the equity of redemption. In May, 1915, the sheriff made to him a deed of the land. He brings this action to quiet his title. Because of superior equities the district court gave judgment permitting defendant to redeem by paying the plaintiff his money, with interest, and a bonus of $150. The plaintiff appeals and demands his pound of flesh. He made good money by acting as the friend, broker, and adviser of Jackson, and by placing his mortgage securities and realizing good money commissions. Their relations became so friendly and brotherly that Jackson trusted his friend Hendrick to bid in his land and to protect him against foreclosure sales, and in short to act the part of a guardian.

The claim of plaintiff is based on a foreclosure of the Graeber mortgage, which Hendrick obtained and caused to be foreclosed. It had no date. It was made to secure three promissory notes,—$150, due November 1, 1913; $111, due November 1, 1913; $300, due November 1, 1914. The mortgage was made to secure a cash loan of $400 and interest and a void promise to pay Graeber $200 for not bidding against Jack-

son at the government sale of land. Max Hendrick probably had some interest in the Graeber claim. He had it for collection. Jackson testifies: "Hendrick came to my place with the mortgage already made out. He said, It runs to Graeber covering the debt, $400. He said it covers only 40 acres in section 30." Hendrick did not read the mortgage. He was sixty-five years old and could not read without glasses. Hendrick said he was in a hurry. I says: "Is it on the 40 acres, and he says, 'Yes,'" and such is the testimony of Mrs. Jackson. Hendrick admitted that he did not read the mortgage to Jackson. Jackson says: "I signed it, but I did not read it at all. I borrowed $400 from Graeber. I paid, I believe $300 or $400;" but, as it turned out, the mortgage was on the 40 acres and on the north half of section 22, and it was acknowledged by Max Hendrick as of June 21, 1913, but the mortgage was not filed for record until September 11, 1913.

On April 3, 1914, seven months before the mortgage became due Graeber and Jackson commenced proceedings to foreclose it. The sale was made by the sheriff on May 9, 1914. For these and several other reasons the foreclosure should be held void:

1. The mortgage has no date and the notice of sale must give the date of the mortgage.

2. The acknowledgment was taken or put on by Max Hendrick, who was not a disinterested person, and it was not recorded until September 11, 1913.

3. The affidavit in regard to the publication of the foreclosure notice is that it was published five successive weeks commencing on the 3d day of April and ending on the 8th day of May, 1914.

4. The notice of sale does not give the date of recording the mortgage as required by statute. Comp. Laws, § 8080.

5. The power of attorney to foreclose is defective. It does not show the residence or postoffice of the person named as the attorney. It does not show that any sum is due on the mortgage.

6. The notice of sale does not state the amount due on the mortgage. In the certificate of sale it is stated that the sum due at date of sale is $443.73 and then there is added costs of sale, making a total of $493.73.

7. As a matter of fact nothing was due on the mortgage at the time of the sale. By giving Jackson credit for the amount paid on the mortgage and credit for the $200 bonus, wrongfully included in the mortgage,

nothing was unpaid only a part of the $300 note, which did not become due until seven months after the foreclosure.

For these reasons it appears that the mortgage foreclosure is void, but were it clearly valid no court should be asked to sustain such a drastic procedure. For his very questionable claim of $500 plaintiff wants the court to give him clear title to an equity worth $5,000. That is altogether preposterous. The manifest duty of plaintiff was to protect Jackson, instead of figuring to beat him out of his land by hasty, premature, snap foreclosure. He was bound to refrain from taking an undue advantage of Jackson even through the form and technicalities of law. Under such facts the trial court should not have allowed Max Hendrick a bonus of $150. The foreclosure proceedings were not conducted fairly or in good faith or according to law.

Judgment affirmed.